**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| CYNTHIA JEAN LOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:22-CV-123-WTM-CLR |
| | ) | |
| DEE DEE NOEL ESTES, | ) | |
| individually, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ESTES' MOTION FOR SANCTIONS
AND INCORPORATED MEMORANDUM OF LAW**

Defendant DeeDee Estes files this Motion for Sanctions and moves the Court to impose sanctions against Plaintiff and Plaintiff's attorney, Mark Bullman, for their extrajudicial conduct in violation of Local Rule 11.2 and established case law of this Court. As shown in this Motion, Plaintiff and her attorney have used extrajudicial sources, specifically the media, in an obvious effort to impact public opinion and bring negative attention to Officer Estes and this lawsuit. Officer Estes seeks an order from this Court imposing decisive sanctions for this conduct, including dismissal of this action and any other sanction which the Court finds proper.

**BACKGROUND**

*1.    Facts of Case*

On July 23, 2020, a Bulloch County Sheriff's deputy was arresting Plaintiff for possession of methamphetamine, possession of drug related objects, tag/registration requirements, and possession of marijuana less than one ounce. (Exhibit 1, BCSO Investigative Case File). Because the Bulloch County Sheriff's Office did not have a female deputy on duty and Plaintiff, a female, needed to be searched before she was taken to jail, Officer Estes, a female Brooklet police officer, was called to the scene to search Plaintiff at approximately 9:53

1

p.m. The search is depicted in camera footage from the scene. (See Exhibit 2, Cloyd Dash Camera Footage, 42:20-44:20[1]; Exhibit 3, Estes Body Camera Footage, 00:30-3:00; Exhibit 4, Cloyd Body Camera Footage, 39:30-41:40; Exhibit 5, Lanier Body Camera Footage, 32:30-35:00). The following summary is specifically taken from Officer Estes' body camera footage and Deputy Cloyd's dash camera footage. (See Ex. 2, Cloyd Dash Cam Footage at 42:20-44:20; Ex. 3, Estes Body Cam Footage at 00:30-3:00).

When Officer Estes arrived on scene, Corporal Lanier told her that "[Plaintiff] had a meth baggy hanging out of her pocket. [See Ex. 5, Lanier Body Cam at 21:00-23:45]. I already got it. She did have one needle on her so be careful, don't get poked. She says she doesn't have anything else on her. I made her take the needle and the knife out. But just so you know, she did have a needle on her, so I don't want you to get poked."

Officer Estes then turned to Plaintiff and asked, "Do you have anything in you or on you?", to which Plaintiff replied, "No." Officer Estes told the male officers to back up and she told Plaintiff to face the hood of the police vehicle. Officer Estes told Plaintiff to "lift your bra up and shake it out." Officer Estes did not ask Plaintiff to pull her shirt off or to expose herself.[2] (Exhibit 7, D. Estes Declaration, ¶ 7). Instead of shaking out her shirt or bra, Plaintiff, without warning, pulled her tank top down and momentarily exposed her breasts in the direction of the police vehicle with her back to the deputies. Officer Estes did not pull Plaintiff's shirt down and

---

[1] This footage was altered to blur Plaintiff's chest area out of respect for her privacy.

[2] Plaintiff testified under oath at her deposition that Officer Estes did not ask Plaintiff to expose herself or force Plaintiff to expose herself. (Exhibit 6, C. Lott Dep., 114:4-9). (The deposition transcript that is cited and attached as an exhibit is the only transcript available at this time. Plaintiff reserved her right to read and sign, and Plaintiff's errata changes have not been received.)

did not touch Plaintiff's breasts. (Id.). Plaintiff held her shirt down for less than three seconds.[3]

Officer Estes then told Plaintiff to squat and cough. Officer Estes did not instruct Plaintiff to take off her shorts, nor did Officer Estes remove or pull down Plaintiff's shorts. (Exhibit 8, D. Estes Dep.,[4] 36:2; Ex. 7, D. Estes Declaration at ¶ 9). Officer Estes likewise never placed her hands or fingers inside Plaintiff's shorts. (Ex. 7, D. Estes Declaration at ¶ 12). While Plaintiff was coughing in the squatting position, Officer Estes bent over to observe visually if anything concealed was visible. (Ex. 8, D. Estes Dep. at 35:2-5). Officer Estes patted Plaintiff down below chest level without removing any clothes. (Id. at 36:2). Officer Estes then patted down the back and sides of Plaintiff's clothing above chest level. Finally, Officer Estes searched Plaintiff's hair and looked inside her mouth.

Before leaving, Officer Estes warned Plaintiff that if she had anything else on her, she needed to turn it over before going to the jail. Officer Estes' interaction with Plaintiff lasted no more than one minute and 50 seconds. The actual search of Plaintiff lasted no more than 60 seconds. According to the Dispatch Card (Exhibit 9, Dispatch Card), Officer Estes was on the scene for only approximately three minutes and 35 seconds.

On May 10, 2022, Plaintiff filed the present lawsuit against Officer Estes. In the Complaint [Doc. 1], Plaintiff alleges that Officer Estes conducted a strip search and body cavity search of Plaintiff at the scene of the traffic stop. Specifically, Plaintiff alleges that Officer Estes "had [Plaintiff] pull down her shirt and bra, thereby exposing her bare chest and breasts fully in

---

[3] The footage blurs out Plaintiff's chest area to respect Plaintiff's privacy. Plaintiff's chest is briefly exposed at 42:45-42:47. (See Ex. 2, Cloyd Dash Cam). Defendant will provide an unedited copy of the footage to the Court if needed.

[4] The deposition transcript that is cited and attached does not include Officer Estes' errata page. Officer Estes reserved her right to read and sign, and the transcript with Officer Estes' errata page has not been provided to Defendant at this time.

public;" "stuck her hands into [Plaintiff's] shorts and felt inside her shorts and into private areas of [Plaintiff's] body inside her shorts;" "made contact with [Plaintiff's] buttocks and her vagina with her fingers;" "pulled [Plaintiff's] shorts down exposing her buttocks and genitals in public;" "reached inside [Plaintiff's] opened shorts ([Plaintiff] did not have any underwear on), touching her skin inside her pants in the front and rear of her shorts;" "spread apart [Plaintiff's] buttocks and placed her fingers in the crack of [Plaintiff's] bottom;" and "penetrated [Plaintiff's] vagina with one or more of her fingers." Plaintiff alleges that the "body-cavity search was conducted in public, in view of deputies and civilians in the truck stop parking lot." [Doc. 1 at ¶¶ 27, 29, 30, 32-35].

Plaintiff alleges that Officer Estes was deliberately indifferent, violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure, and violated Plaintiff's rights under the Georgia Constitution. Officer Estes answered Plaintiff's Complaint on June 7, 2022, and denied all allegations that she conducted a strip search or a body cavity search or acted otherwise inappropriately. [Doc. 6]. Officer Estes specifically denied that she made Plaintiff expose her breasts or touched Plaintiff inside of her clothing. [Id.]; (Ex. 7, D. Estes Declaration at ¶¶ 7, 12-15).

Plaintiff's deposition testimony contradicts the allegations made in the Complaint and in the television interview discussed below on several points. At her deposition, Plaintiff testified in direct contradiction of her complaint that Officer Estes did not make her expose her breasts. (Ex. 6, C. Lott Dep., 114:4-9). Also, at her deposition, Plaintiff testified that Officer Estes pulled Plaintiff's shorts down, exposing her bare bottom and, implicitly, her genitals, while having her squat and cough. (Id. at 139:8-20). Plaintiff testified that Officer Estes pulled Plaintiff's shorts down (apparently with one hand) before she was coughing. (Id. at 115:19-25). Specifically,

Plaintiff testified that Officer Estes pulled down her shorts at the 42:50-42:52 time stamp on the dash camera video, which depicts Officer Estes telling Plaintiff to squat and cough. (Id. at 116:1-14). She had just testified previously, however, that at the time Officer Estes told Plaintiff to squat and cough, Officer Estes' hand was on Plaintiff's mid-back. (Id. at 114:18—115:1).

This portion of the dash cam video footage (ex. 2, Cloyd Dash Cam at 42:50-42:52) establishes that Officer Estes' left hand is clearly visible at all times without any movement of Officer Estes' right arm or shoulder; such movement of Officer Estes' right extremity would necessarily have occurred for Officer Estes to pull down Plaintiff's shorts with only one hand. (Id.). Plaintiff testified that she did not know whether Officer Estes used one hand to pull down her shorts, but Plaintiff admitted that the video shows that Officer Estes' left hand was visible to the side and not touching Plaintiff during this part of the search and, therefore, Plaintiff concluded that Officer Estes must have used one hand. (Ex. 6, C. Lott Dep. at 118:2-4; 118:21—119:3). There is no explanation of how Officer Estes could have managed to pull Plaintiff's shorts down in only a few seconds without moving her arm.

Moreover, Officer Estes' body camera footage in the moments that she is telling Plaintiff to squat and cough (ex. 3, Estes Body Cam at 1:22-1:25) demonstrates that Plaintiff's shorts are up and covering her bottom, as shown in the lower right corner of the video screen. Officer Cloyd's body camera also shows Plaintiff in a deep squat with her shorts on her bottom while Officer Estes is having her squat and cough, flatly debunking Plaintiff's testimony that Officer Estes pulled her shorts down with one hand while having her squat and cough. (Ex. 5, Lanier Body Cam at 40:14-40:19). Moreover, the total time involved in the squat and cough portion of the interaction was less than seven seconds. Specifically, Plaintiff alleges that Officer Estes pulled her pants down at the 42:50-42:51 mark and that Plaintiff pulled her pants back up at the

42:57 mark of the dash camera footage. (Ex. 6, C. Lott Dep. at 121:18-24; see Ex. 2, Cloyd Dash Cam). It is obvious that Officer Estes could not have pulled Plaintiff's pants down with one hand without any movement of her arm while having her squat and cough, which is the only time at which Plaintiff says her shorts were down. (Ex. 6, C. Lott Dep. at 120:25—121:8). This evidence directly contradicts Plaintiff's allegations in the Complaint that "Defendant Estes pulled Ms. Lott's shorts down exposing her buttocks and genitals in public." [Doc. 1 at ¶ 32].

2.    _WSB-TV Interview_

On November 10, 2022, during the pendency of this legal action and while discovery remains ongoing, Plaintiff and Mr. Bullman appeared in a TV interview with WSB-TV Channel 2 "Action News" investigative reporter Ashli Lincoln discussing the facts of this case, federal law on strip searches, their interpretation of the application of law to Plaintiff's version of the facts, the lawyer's opinions on the case, details of an unrelated incident involving another of Mr. Bullman's clients, and more. (Exhibit 10, WSB-TV Article; Exhibit 11, WSB-TV Video).[5] WSB-TV is a television station in Atlanta, Georgia, that is affiliated with ABC.  It is one of the major news stations in the South, if not the nation, and, according to the Atlanta Journal Constitution, "Channel 2 Action News/WSB-TV continues to dominate among local newscasts in overall ratings . . . [which] has been the case for many years."[6] Suffice it to say, WSB-TV is a major platform that reaches a significant audience.

The news segment, which was more than four minutes long (more than twice the entire length of time Officer Estes interacted with Plaintiff) and aired at 5:48 p.m., was titled "Georgia

---

[5] https://www.wsbtv.com/news/local/atlanta/georgia-police-strip-searched-women-exposing-private-parts-front-strangers/RAYLJR5WDBFAVI2CT3T33YHGGY/

[6]https://www.ajc.com/blog/radiotvtalk/local-news-game-show-ratings-jump-since-pandemic-started/r70VoQoATAY2WiEe4LQl9I/

police strip searched women, exposing private parts," and featured a caption stating that "[t]he US Supreme Court ruled that you have a right to privacy when it comes to strip searches. These women say that never happened." (See Ex. 10, WSB-TV Article). The news video began with the evening anchor stating that "Action News investigates Georgia police strip-searching women looking for drugs on the side of the road." (See Ex. 11, WSB-TV Video). The news anchor then commented that "two Georgia women say their private body parts were exposed to strangers," and that reporter Ashli Lincoln looks into "whether these searches are legal." The reporter explained that "the Supreme Court says we have a right to privacy when it comes to strip searches. That's why they're usually done in the privacy of a jail. But for both of these women, they were done right on the side of the road in front of male officers and onlookers."

The segment played a portion of the dash cam video depicting the search of Plaintiff, specifically a portion during which Plaintiff exposed her bare chest to the camera, before cutting to a darkened silhouette of Plaintiff[7] who said that she "cried" the first time she saw the video. The reporter stated that "Cindy says she will never forget what a Brooklet police officer did to her on the night of July 23, 2020." Plaintiff stated that Officer Estes was "going up and down and all around," before she paused and said that "the whole time whenever I'm just sitting there thinking like this cannot be legal." The news video cut back to a portion of the dash camera footage "showing the moment, Cindy says, Brooklet police officer DeeDee Estes conducted a full body cavity search on her in plain view of the public after deputies suspected Cindy of having drugs on her during a traffic stop." Plaintiff stated that "she's putting her fingers like

---

[7] The video notes that Plaintiff asked the reporter to use only her first name, Cindy, to protect her privacy. Plaintiff did not want to give her last name or show her face to protect her own privacy yet was willing to publish Officer Estes' name so she could be pilloried in public, punctuated by thousands of comments attacking Officer Estes and numerous hate calls to the Brooklet Police Department.

inside of me in the front and in like up the back side of me."

The reporter commented that "Estes was called to assist Bulloch County sheriff's deputies for what was supposed to be a female pat down. Instead, Estes searched inside Cindy's private areas, making her expose her breasts in front of male officers and onlookers at this truck stop." The reporter then interviewed a purported witness, Larry Higgs, asking him if he could even believe what he was seeing, to which he responded, "no ma'am." The witness, who according to the news video witnessed the incident, stated that "the lady stripped her down right in front of God and everybody." The reporter then discussed another incident involving a woman, Lisa, who was searched at a traffic stop in Griffin, Georgia, in August 2021.

After playing body camera footage of Lisa's search, the reporter interviewed Plaintiff's attorney, Mark Bullman, who apparently represents both Plaintiff in this lawsuit and the other arrestee. He told the reporter that "strip searches should be done in private," and that "doing it in public is—I mean—the law is clear and it has been for a very long time that you don't do that."

The reporter cited a Supreme Court case from 1966, stating that "[u]nder Fourth Amendment searches involving intrusions beyond body's surface on mere chance that desired evidence might be obtained are forbidden." The reporter stated that "Bullman says the searches didn't have to happen on the side of the road." Mr. Bullman remarked that "[i]t can be done in a medical facility. It can be done in a jail. It can be done just more in private—not in a parking lot."

The reporter responded that "[i]n both cases, Bullman says, neither Brooklet nor Griffin police departments investigated their officer's actions. Officer Estes was eventually fired for an unrelated incident." The reporter concluded that "Cindy had an old baggie with some meth residue on her," before asking, "[s]o what can be done to hold officers accountable? Cindy filed

a lawsuit and Lisa plans to file one as well . . . Brooklet police and former Officer Estes declined a request for comment [8], but in court filings, Estes said she acted in good faith. We reached out to Georgia P.O.S.T., the agency that certifies police officers. It is now looking into both of these cases. . . . We'll let you know what happens." A photo of Officer Estes was displayed throughout the segment.

3.    _Social Media_

In addition to airing on the evening news, the subsequent article featuring the video was posted to WSB-TV's webpage. (Ex. 10, WSB-TV Article; Ex. 11, WSB-TV Video). The article was also shared to WSB-TV's Facebook page twice on November 10 and 12, 2022, garnering 100 comments, 26 shares, and 208 "likes" or other reactions. (Exhibit 12, WSB-TV Facebook Posts). Comments to the posts include, "They must be jailed . . . what sort of nonsense is this;" "Horrible;" "[T]hey don't deserve to be degraded like that;" and "Waiting for the people that think law enforcement can do no wrong." (Id.). Another Georgia attorney shared the post to her page, stating that "[t]his is unbelievable. It's also unacceptable that these male officers stood by and let it happen . . . The lawsuit against these agencies is a good start but the DOJ probably needs to come down and look into these cases." (Exhibit 13, Koehler Facebook Post). The lawyer's share of the post received more "likes," shares, and comments, including a woman who remarked, "[h]oly smokes. They searched her road side? Wtf?!" (Id.). Other individuals and pages shared the video on Facebook, including one where an apparent witness to the search of Lisa, commented that he "was there." (Exhibit 14, Other Facebook Posts). Plaintiff's mother, who is also a purported witness in this lawsuit, shared the article as well and stated that, "[t]his is not only wrong but unlawful! If this happens to you or you witness it happening to someone else

---

[8] This statement is flatly false. Neither Officer Estes nor her undersigned counsel were contacted about this news story at all nor were they asked to comment.

PLEASE REPORT IT!" (Exhibit 15, Williams Facebook Post). The deposition of Plaintiff's mother is scheduled for December 20, 2022, and was set before undersigned counsel knew of this news segment.

Significantly, on November 10, 2022, the evening that the story aired, WSB-TV posted the video of the news segment to its YouTube channel, which has more than 270,000 subscribers. (Exhibit 16, WSB-TV YouTube Post).[9] The video has received (to date) more than 258,000 views, 3,400 "likes" and 1,631 comments. Some comments include:

- "I can only hope that there is accountability for these officers.  The fact that this took place almost two years ago says exactly how much their departments care about misconduct.  End qualified immunity now." This comment received 465 "likes" and 18 comments in response.

- "Let this be a warning that all American cops can do this to you, your children, your wives, your teen age daughters while mocking them." This comment received 337 "likes" and 35 comments in response.

- "This officer is despicable. She's clearly showing a lack of judgment. Her job overall requires someone with good judgment in different situations." This comment received 203 "likes" and six comments in response.

- "It's never going to stop. Cops are so far gone I don't know why anyone still has a shred of respect for them." This comment received 94 "likes" and seven comments in response.

- "To any past, present, or future victims of law enforcement: sue the individual officer(s), as well as the department.  Maximum damage please!" This

---

[9] https://www.youtube.com/watch?v=BsMKZ5jVhkw

comment received 88 "likes."

- "The officers should be charged with sexual abuse and when sentenced, spend the rest of their lives listed as violent sexual predators, be on parole when released from prison for life and have their living quarters torn apart and destroyed on a weekly basis while cuffed face down with five people sitting on them." This comment received 117 "likes."

- "Wow…would've never come to light without these lawsuits. I really can't imagine the mental trauma this has caused them forever. There's no amount of $ that could make being draped on the side of the road in front of other gang members right. How in Jesus' name did none of the other officers report this, and how on His holy father's earth are these officers not in a prison cell?" This comment received 35 "likes" and four comments in response.

- "Absolutely disgusting I feel so bad for those two females you need to abolish qualified immunity immediately." This comment received 319 "likes" and 15 comments in response.

- "I would expect nothing less from a police department with a star & 1/2 rating. Great police work A-holes. You did all that for a baggy of residue." This comment received 83 "likes" and three comments in response.

- "I feel so hurt for these two women and hope they get a huge settlement." This comment received 14 "likes" and one comment in response.

- "I am from Scotland and I find this incredible that the police are so out of control that they would do this." This comment received 17 "likes" and one comment in response.

- "This is beyond their coercive powers handed down to them... Now molestation is a new feature; who are we gonna call when you really need their help!" this comment received 16 "likes" and one comment in response.

- "Isn't this sexual assault???" This comment received 376 "likes" and 36 comments in response.

- "Authority is the most dangerous superstition. These victims were kidnapped and sexually assaulted by deranged, prowling, badged criminals." This comment received six "likes."

- "This is sickening. I felt violated just watching. Wow smh." This comment received 63 "likes" and one comment in response.

- "'The most dangerous thing in life is an incompetent that has been given a gun and a law enforcement badge.' . . . ." This comment received eight "likes."

- "That was not a strip search. That was a vile, sexual assault, particularly if no drugs were found." This comment received 36 "likes" and one comment in response.

- "Typical law enforcement in America. They check their humanity at the desk when they pin on that badge. They treat citizens like livestock. She believes she acted in 'good faith'? That tells you right there about a cops sense of humanity."

- "Why do cops insist on behaving like criminal, sociopathic j@ck@sses??? Domination and humiliation is the name of their game. I hope these women end up as millionaires!!!!!!!  Thank God for good plaintiff attorneys." This comment received 84 "likes" and 7 comments in response.

- "Nothing about that is in good faith, they wanted to diminish and demean those

people for no reason other than they thought they could get away with it. What does it say when the cops are criminals committing sexual assaults under the color of law enforcement."

- "These officer who did these searches belong on the sex offender registry!! And should be in prison for sexual assualt! And who ever trained them to do this should be charged as a accessory!"

- "That officer that did the search should be fired and thrown in jail and lose every dime nickel penny that she owns I don't care if her kids have to go out on the street their mother did it to them and every officer that was on the duty there should be out of the job and never become a cop again and it's still a lawsuits on them."

Id.

    There were even several comments insinuating that physical harm should come to Officer Estes:

- "She needs to go to prison and have this done to her against her will."

- "Wow that's crazy now if you do that to my daughter you be surprised what I'm going to do to you police or not I'm just going to jail."

- "If someone did that to me, that officer better have their head on a swivel."

- "You know the way they treat people and they wonder why people are shooting them."

- "And they Wonder why people killing them right."

- "The 2nd Amendment. All I'm saying."

- "Have any of these cops gotten shot in the head."

- "Hopefully those officers get suspended…from a tree."

- "Notice to any officer that does this to any of the females in my life, it's the last thing you do. I will be the thief in the night, and take a guess at what I'm going after."

Id.

These are only a few comments out of thousands, many of which are so vile as to be inappropriate to include in this brief. It is abundantly clear that Plaintiff and her lawyer, with an apparent expectation of impunity, sought out attention from the news media during the pendency of this case. As a result, Officer Estes has already been tried and "convicted" in a one-sided kangaroo court orchestrated by Plaintiff and her legal counsel.

## ARGUMENT AND CITATION TO AUTHORITY

The Eleventh Circuit Court of Appeals has acknowledged that "'[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1320 (11th Cir. 2002) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Chambers, 501 U.S. at 43 (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962)). Further, "it is firmly established that '[t]he power to punish for contempts is inherent in all courts" and that this power "reaches both conduct before the court and that beyond the court's confines." Id. at 44 (quoting Ex parte Robinson, 19 Wall. 505, 510 (1874); Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798 (1987) (citations omitted)). Courts use this inherent power with discretion "to fashion an appropriate sanction for

conduct which abuses the judicial process." <u>Purchasing Power, LLC v. Bluestem Brands, Inc.</u>, 851 F.3d 1218, 1223 (11th Cir. 2017). "A court may exercise this power to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Id.</u> The sanctions available to a court acting under its inherent powers include awarding attorney's fees, dismissing the action, assessing a fine, and excluding evidence, among other available sanctions. 27A Fed. Proc., L. Ed. § 62:798 (June 2019 Update).

The Local Rules and case law of this Court explicitly prohibit Plaintiff and Mr. Bullman's conduct. The facts of this case illuminate the need for such rules. Local Rule 11.2 recognizes the power of the media to interfere with a litigant's right to a fair trial (and to prejudice the due administration of justice.) Here, the media was involved because Plaintiff and her counsel became actors in an oppressive attempt to affect public opinion about the present case. The rule admonishes attorneys practicing before the Court not to release information to the media that has a reasonable likelihood of interference with these ideals:

> It is the duty of every lawyer or law firm associated with the case not to release or authorize the release of information or an opinion, which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent civil litigation with which he or his firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

S.D. Ga. L.R. 11.2.

The interviews of Plaintiff and her lawyer were nothing more than a calculated effort to violate the rules of this Court, create one-sided media publicity, apply public pressure on Officer Estes, and negatively influence the public's perception about the merits of this action, by impacting potential jurors' attitudes. Plaintiff and Mr. Bullman appeared in interviews in the middle of the discovery period and only days after the depositions of both Plaintiff and Officer

15

Estes, wherein Officer Estes denied conducting a strip search, denied conducting a body cavity search, denied that Plaintiff's buttocks were exposed, and denied telling Plaintiff to expose her bare chest. (Ex. 8, D. Estes Dep. at 20:11-19; 29:18-19; 30:18; 47:17-18; 48:8). None of this information was mentioned in the news story or in the interviews of Plaintiff and her lawyers. Further, Plaintiff admitted in her deposition that Officer Estes did not tell her to or make her expose her breasts, but rather that she pulled down her shirt on her own and not at the direction of Officer Estes.[10] (Ex. 6, C. Lott Dep. at 114:4-9). The deposition testimony and body camera footage also disprove Plaintiff's allegation that Officer Estes pulled her shorts down and exposed her genitals, as discussed supra, but the news segment did not show those portions of the body camera video and failed to mention that Officer Estes specifically denied any improper conduct.

Mr. Bullman also took the depositions of the deputies on the scene, Cloyd, Lanier, and Oglesby, only a month prior to the interviews. Deputy Cloyd testified that he and the other two deputies were the only individuals in the "immediate area" during the time of the search, but that he did not see Plaintiff's breasts, he did not see Officer Estes pull down Plaintiff's shorts, and he did not see Officer Estes place her hands inside Plaintiff's shorts. (Exhibit 17, A. Cloyd Dep., 12:2-11; 22:4-15; 23:12-14). Deputy Cloyd also testified that not only would a strip search or body cavity search have been inappropriate, but those things would also not have happened. (Id. 26:2-12). Deputy Lanier testified that he and the other two deputies were the only individuals in the "immediate area" during the search but that he did not see Plaintiff's breasts, he never saw Plaintiff's buttocks exposed, and he did not see Officer Estes reach into Plaintiff's shorts. (Exhibit 18, D. Lanier Dep., 10:11-21; 14:24—15:5). Deputy Oglesby also testified that he and the other two deputies were the only individuals in the "immediate area" during the search but

---

[10] Despite this sworn testimony, Plaintiff apparently convinced the news reporter that Officer Estes made her expose her breasts in front of male officers and onlookers at this truck stop.

that he did not see Plaintiff's breasts and he never saw Plaintiff's buttocks exposed. (Exhibit 19, H. Oglesby Dep., 8:7-18; 15:8-10; 17:8-10). None of this was mentioned by Plaintiff or her lawyer in their interviews.

Mr. Bullman attempted to attack the deputies as witnesses by seeking to establish that they were not paying attention to Officer Estes' search of Plaintiff and, thus, they supposedly would not know one way or the other whether Officer Estes committed the acts that Plaintiff alleges. The established facts remain, however, that these three officers were the only individuals in the immediate area of the search, merely eight to ten feet away, (and visible on the dash cam video) but did not see something as egregious as Officer Estes searching inside of Plaintiff's orifices and "stripping her down right in front of God and everybody," as Plaintiff's "witness" stated. None of the depositions taken so far have supported Plaintiff's allegations, other than Plaintiff's self-serving and conflicting testimony. The video footage available also discredits Plaintiff's claims and allegations, as previously discussed. Despite all this, Plaintiff and her attorney are presenting their side of the case through the media by making incomplete allegations to inspire public outrage even in the face of Plaintiff's lack of credibility.

At least one other district court has dealt with an analogous situation wherein a litigant used extrajudicial publicity as a means of influencing witnesses and/or prejudicing the jury pool. In Diamond Consortium, Inc. v. Manookian, the Eastern District of Texas exercised its inherent powers to sanction a defendant for the defendant's proactive use of websites to publicize the litigation and publicly accuse the plaintiff of tax fraud, among other things. No. 4:16-cv-94, 2017 WL 3301527 (E.D. Tex. Aug. 3, 2017). The Eastern District of Texas wrote regarding its obligations:

> The Court has an obligation to protect the integrity of the judicial process and, in particular, the integrity of a jury trial; and there is strong evidence here that

Defendants' efforts to publicize the existence of these websites are a deliberate attempt to disrupt that process by improperly influencing witnesses and/or prejudicing the jury pool. Defendants' assertion that there is no proof that any jury *venire* members were contacted [Cit.] is irrelevant, given that potential and actual jurors may be tempted to use the Internet to search for information about the litigants—in spite of being warned by the court not to do so. Accordingly, the Court finds the timing and publication of these websites—with Manookian's help and/or approval—further support a finding of Manookian's bad faith conduct in abuse of the judicial process.

Id. at *10.

Like the conduct that was sanctioned in Diamond Consortium, the conduct here is purely extrajudicial conduct that is intended to sway public opinion, taint a prospective jury pool, and interfere with the administration of a fair trial. The conduct here rises to the level of bad faith and oppressiveness necessary for the exercise of the Court's inherent power to impose sanctions. Plaintiff has made baseless allegations in widely-circulated media against Officer Estes. Plaintiff has named two "witnesses" who supposedly saw the alleged search, even though there were no civilians present or visible on body camera footage (Ex. 8, D. Estes Dep. at 62:17-23); the three sheriff's deputies standing merely eight to ten feet away did not see anything to support Plaintiff's allegations; and the body camera and dash camera footage contradicts Plaintiff's version of events. (None of which was mentioned in the news story). Plaintiff's witnesses, whose credibility is highly suspect, will be cross-examined by defense counsel in the coming weeks. Finally, Plaintiff's lawyer, an officer of this Court, appeared in an interview and gave his opinion on the allegations and law in this case with the clear intent to persuade public opinion.

Plaintiff and her attorney's extrajudicial acts have dramatically impacted the course and scope of this case. Although the TV news segment aired in the Atlanta area, the internet reaches worldwide and, as established above, the story has reached hundreds of thousands, if not millions, of people. Further, as noted by the court in Diamond Consortium, "potential and actual jurors may be tempted to use the Internet to search for information about the litigants—in spite

of being warned by the court not to do so." 2017 WL 3301527, at *10. A simple Google search of Officer Estes now reveals the WSB-TV article, as well as the same article reposted by other sources, including Yahoo.com and Trendswide.com.[11] The virulent comments sampled above show that the news video generated outrage as far away as Scotland. (Ex. 16, WSB-TV YouTube Post). Plaintiff and Mr. Bullman have plainly violated the Southern District's Local Rules and sought to smear Officer Estes for the obvious purpose of influencing public opinion, tainting jurors, creating negative sentiment against Officer Estes, and swaying the ultimate outcome of this case.

This Court should not tolerate such conduct. The Court is asked to exercise its inherent powers to sanction both Plaintiff and Mr. Bullman by dismissing Plaintiff's case with prejudice. Although the local rule explicitly prohibited Mr. Bullman's conduct, this Court has previously sanctioned a plaintiff when the party herself, and not her attorney, went to the media. See Mai v. Nine Line Apparel, Inc., No. 4:18-cv-277-WTM-BWC, 2019 WL 5092478 (S.D. Ga. Oct. 10, 2019). In that case, the plaintiff shared news articles about the lawsuit and made numerous comments on her personal Facebook page and later participated in a WSAV interview in which the plaintiff discussed the action. Id. at *1-2. The interview was published to WSAV's website and Facebook pages and received more than 400 comments. Id. at *2. The defendant sought sanctions and argued that the plaintiff was seeking to taint the jury pool. Id. This Court

---

[11]https://www.yahoo.com/now/georgia-police-strip-searched-women-230010176.html?guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAI0VK_abyyaMXgUqInG1T9HCuZTg4u3ah8nZLFhNTt-7zYAgO7ZwMCxa_2DohHxmAcnPF4W-85Ftzor4KGRxbeNFd-64VfU2fGOZ_2wY8FQlVEBHgLcytQQH6TzO3NpzeQBehLtJqbA0j8thDtnTrLcmRxDVxKMQJCtM1HhnnuU1

https://trendswide.com/georgia-police-strip-searched-females-exposing-private-parts-in-entrance-of-strangers/

sanctioned the plaintiff by awarding attorneys' fees and proscribed any further extrajudicial statements by parties or counsel that may prejudice the proceedings. Id. at *5. This Court noted that "[i]ndeed, although litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise in the context of both civil and criminal trials." Id. (quoting United States v. Brown, 218 F.3d 415, 424 (5th Cir. 2000)).

Plaintiff and Mr. Bullman's purposeful conduct warrants a sanction more severe than attorneys' fees. The allegations made by Plaintiff and Mr. Bullman are the type described as "toothpaste that cannot be put back in the tube," with fear of putting it too lightly. This case is more like poison gas escaping into a crowded public arena. The YouTube comments alone show that a fair and unprejudiced case and potential future trial may be impossible. More than 1,600 people and counting have vilified Officer Estes in public comments after Plaintiff and Mr. Bullman intentionally gave interviews to the media with that exact goal. When counsel for Officer Estes first viewed the YouTube video around 3:30 p.m. on November 17, 2022, a week after it was published, the video had just over 210,000 views and 1,406 comments. By 8 p.m. on that same date, less than five hours later, the YouTube video had 214,145 views and 1,421 comments. At the time of the filing of this motion, the video had 258,679 views, 1,631 comments, and 3,400 "likes." The YouTube video only accounts for part of the story's exposure—it is unknown how many people watched the news segment when it aired and how many people have seen or circulated the article and news clip from social media or other sources.

The incomplete and disingenuous story as published lacked any sense of integrity or professionalism. Plaintiff's allegations were presented as fact, and Mr. Bullman's application of the alleged law to these "facts" has been evidently taken as fact by many people. This Court is the only authority which may presently determine the application of federal law to the facts of

this case and then only with a complete and accurate record of the facts. The story presented by Plaintiff and Mr. Bullman, however, attempts to preempt the Court's power based on a biased and manufactured set of "facts." It is apparent that the court of public opinion has already determined Officer Estes committed the acts alleged and deserves punishment much more severe than liability for monetary damages. There is no way to undo the harm that has been caused, and that harm will only grow and serve to severely prejudice Officer Estes as well as the impartial administration of justice. What is on the internet is essentially impossible to erase. Thus, severe sanctions are warranted. No lesser sanction than dismissal can (even partially) rectify the prejudice that has been caused by Plaintiff and Mr. Bullman's actions. For these reasons, Officer Estes respectfully requests that the Court sanction Plaintiff and her attorney by dismissing this case.

Respectfully submitted, this 28th day of November, 2022.


OLIVER MANER LLP

**/s/ PATRICK T. O'CONNOR**

Post Office Box 10186                                    PATRICK T. O'CONNOR
Savannah, Georgia 31412                            Georgia Bar No. 548425
(912) 236-3311 – Telephone                        JACOB D. MASSEE
(912) 236-8725 – Facsimile                          Georgia Bar No. 551890
pto@olivermaner.com                                  AMELIA C. STEVENS
jmassee@olivermaner.com                         Georgia Bar No. 758771
astevens@olivermaner.com

*Attorneys for Defendant Estes*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the

directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of

electronic filing, by e-notification and e-service to the following:

Mark B. Bullman
Melvin L. Hewitt
Richard J. Crowson
Isenberg & Hewitt, P.C.
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
mark@isenberg-hewitt.com
mel@isenberg-hewitt.com
rick@isenberg-hewitt.com

Submitted this 28th day of November, 2022.

OLIVER MANER LLP

**/s/ PATRICK T. O'CONNOR**

| | |
|---|---|
| Post Office Box 10186 | PATRICK T. O'CONNOR |
| Savannah, Georgia 31412 | Georgia Bar No. 548425 |
| (912) 236-3311 – Telephone | JACOB D. MASSEE |
| (912) 236-8725 – Facsimile | Georgia Bar No. 551890 |
| pto@olivermaner.com | AMELIA C. STEVENS |
| jmassee@olivermaner.com | Georgia Bar No. 758771 |
| astevens@olivermaner.com | |

***Attorneys for Defendant Estes***